UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
ANDREW ARNOLD,                          :
                                        :       09 Civ. 7932 (DLC)
                Plaintiff,              :
                                        :
        -v-                             :       OPINION & ORDER
                                        :
BETH ABRAHAM HEALTH SERVICES, INC.,     :
YONI KONO, MAUREEN CONNOLLY, KERI       :
FRAZIER-WHITE, and 1199 SEIU,           :
                                        :
                Defendants.             :
                                        :
----------------------------------------X

Appearances:

For Plaintiff Pro Se:
Andrew Arnold
1964 Nereid Avenue
Bronx, NY 10466

For Beth Abraham Defendants:
Terri L. Chase
Amanda M. Betman
Jones Day
222 East 41st Street
New York, NY 10017

For Defendant 1199 SEIU:
Richard Dorn
Levy Ratner, P.C.
80 Eighth Avenue, Floor 8
New York, NY 10011

DENISE COTE, District Judge:

    Pro se plaintiff Andrew Arnold ("Arnold" or "plaintiff")

brings suit alleging that he was fired because of his federal

jury service in violation of the Jury System Improvements Act,

28 U.S.C. § 1875 (the "Jury Act").  Named as defendants are

Arnold's former employer, Beth Abraham Health Services, Inc. ("Beth Abraham"); three Beth Abraham administrators, Yoni Kono ("Kono"), Maureen Connolly ("Connolly"), and Keri Frazier-White ("Frazier-White") (collectively, with Beth Abraham, the "Beth Abraham defendants"); and 1199 SEIU (the "Union").[1]  On February 16 and 18, the Union and the Beth Abraham defendants, respectively, moved to dismiss the plaintiff's amended complaint.  For the following reasons, the Union's motion is granted and the Beth Abraham defendants' motion is denied.

BACKGROUND

The facts below -- taken from the plaintiff's amended complaint, materials attached to the complaint, and plaintiff's opposition papers -- are assumed to be true for the purposes of resolving the defendants' motions.  Additional detail is provided in this Court's Opinions in the related cases of Arnold v. 1199 SEIU, No. 09 Civ. 5576 (DLC), 2009 WL 4823906 (S.D.N.Y. Dec. 15, 2009) ("the Arnold I Opinion"), and Arnold v. Beth Abraham Health Servs., Inc., No. 09 Civ. 6049 (DLC), 2009 WL 5171736 (S.D.N.Y. Dec. 30, 2009) ("the Arnold II Opinion").

Arnold was employed by Beth Abraham as an "Authorization Specialist" from 1997 until he was fired on April 5, 2007. While working at Beth Abraham, plaintiff was a member of the

---

[1] The Union represents that it is properly sued as 1199SEIU United Healthcare Workers East.

Union.[2]  On Friday, March 30, 2007, Arnold was informed by a supervisor that his request to take vacation that day, March 30, had been approved.  Arnold declined to take the vacation day, however, and told his supervisor that he wished to "reschedule for a later date."  When his supervisor agreed in principle to that request, Arnold took that as an "admission" that Beth Abraham did not have any plans to fire him at that time, because "otherwise they would have expressed reservation about rescheduling his vacation for a future date."

In the afternoon later that same day, Arnold informed Kono, a Beth Abraham manager, that he was scheduled to serve jury duty the following Monday, April 2, and gave her a copy of his jury summons.  Kono then stressed to Arnold the importance of promptly giving notice about any scheduled jury service, and Arnold concedes that he was "untimely" in notifying Beth Abraham of his April 2 jury duty.

On Monday, April 2, 2007, Arnold began federal jury service in this courthouse.  On April 5, 2007, Arnold returned to work while on a break from jury service.  When he returned, Kono asked Arnold about the status of his jury service obligation,

---

[2] As described in the Arnold I Opinion, the terms of employment for Union members working at Beth Abraham were governed by a collective bargaining agreement ("CBA") concluded between the Union and the League of Voluntary Hospitals and Homes of New York, an agent acting on behalf of Beth Abraham.  As a Union member, Arnold's employment was covered by the CBA.  See Arnold I Opinion, 2009 WL 4823906, at *1.

and Arnold replied that "[he] will be serving for a long time,"
because he had been told that he was selected to serve on a
federal grand jury.[3]

Later that day, Arnold was directed to go to Human
Resources.  Once there, Frazier-White informed Arnold that he
was being fired, effective immediately, because of his poor work
performance.  In his amended complaint, Arnold asserts that this
proffered reason was "entirely pre-textual" and that Arnold was,
in fact, fired for fulfilling his jury service.  As of the date
he was fired, Arnold had expected to perform "further service on
a federal grand jury," which Arnold alleges "would have taken
him away from his job duties for what was believed to be a
considerable amount of time."  Plaintiff contends that these
facts show a violation of the Jury Act by both the Beth Abraham
defendants and the Union.

<u>PROCEDURAL HISTORY</u>

Litigation concerning Beth Abraham's firing of Arnold has
been ongoing in various fora since his employment ended on April
5, 2007.  On or about July 3 of that year, Arnold filed a
verified complaint with the New York State Division of Human

---

[3] In an August 23, 2007 verified answer submitted by the Beth
Abraham defendants to the New York State Division of Human
Rights -- a document Arnold attaches to his amended complaint --
Beth Abraham denies that Arnold notified it on April 5 that his
jury service was expected to continue.

Rights ("the Agency") charging Beth Abraham with unlawful sex discrimination in violation of the New York State Human Rights Law ("NYSHRL") and Title VII of the Civil Rights Act of 1964 ("Title VII").  Arnold's verified complaint also asserted that Arnold was fired because he was selected to serve on a federal grand jury.  By Order of February 7, 2008, the Agency concluded that it had jurisdiction and made a determination that there was probable cause for Arnold's charge of sex discrimination. Following a request to reopen filed by Beth Abraham on April 15, 2008, the Agency reopened the case and issued a revised final determination of "NO PROBABLE CAUSE" on May 30, 2008 (the "Agency Determination").  The Agency Determination concluded that there was insufficient evidence of sex discrimination in the record and observed that the NYSHRL does not protect employees against discrimination based on jury service.

On July 28, 2008, Arnold filed a verified complaint and Article 78 petition in New York Supreme Court, Bronx County, seeking judicial review of the Agency Determination.  By Decision and Order of December 16, 2008 (the "Article 78 Decision"), the state court dismissed Arnold's Article 78 petition.  Arnold appealed to the Appellate Division, which affirmed the Article 78 Decision on February 25, 2010.  See Arnold v. N.Y. State Div. of Human Rights, 70 A.D.3d 605, 894

N.Y.S.2d 432 (N.Y. App. Div. 2010) (the "Appellate Division Decision").

On or about August 6, 2009, Arnold filed a complaint with this Court's Pro Se Office alleging a violation of the Jury Act, thereby initiating the instant lawsuit ("Arnold IV" or "this lawsuit").  This lawsuit was assigned to this Court on the basis that it was related to three other cases filed by Arnold then pending before this Court: Arnold v. 1199 SEIU, No. 09 Civ. 5576 (DLC) ("Arnold I"), Arnold v. Beth Abraham Health Services, Inc., No. 09 Civ. 6049 (DLC) ("Arnold II"),[4] and Arnold v. Beth Abraham Health Services, Inc., No. 09 Civ. 6995 (DLC) ("Arnold III").[5]  On November 10 and November 16, 2009, counsel for the Beth Abraham defendants and the Union, respectively, requested

---

[4] Arnold I and Arnold II were each originally filed in New York Supreme Court on or about March 26, 2009.  Arnold I was removed to federal court on June 17, and Arnold II was removed on July 2.  Plaintiff's motions to remand Arnold I and Arnold II to state court were denied, respectively, on August 17 and August 19.  Thus, Arnold IV was filed in federal court after Arnold I and Arnold II had been removed, but before plaintiff's motions to remand had been adjudicated.

[5] The initiating documents for Arnold III were received by the Pro Se Office on or about March 27, 2009.  On August 7, the complaint in Arnold III was accepted for filing, and an amended complaint was filed on September 30 essentially alleging the same gender discrimination claims as in Arnold I and Arnold II.  Following the dismissal of Arnold I and Arnold II on December 15 and December 30, respectively, plaintiff voluntarily dismissed Arnold III in January 2010.

that these cases be consolidated.[6]  By Orders of November 12 and
November 17, the Court directed Arnold to respond with his
reasons, if any, why the defendants' requests for consolidation
should not be granted.  In his response, Arnold opposed the
application for consolidation and requested leave to amend the
complaint in this lawsuit.  By Order of December 7, plaintiff
was directed to file and serve his amended complaint in this
lawsuit by January 22, 2010.  On December 30, following the
dismissals of Arnold I and Arnold II and the issuance of a show-
cause order in Arnold III, the Court denied defendants'
applications for consolidation.

Arnold filed his amended complaint in this lawsuit (the
"Complaint") on January 21, 2010.  In the Complaint, Arnold
contends that the termination of his employment was "a result of
Plaintiff's decision to fulfill his Federal Jury service
obligation."  The Complaint seeks entry of judgment, injunctive
relief, and appointment of counsel as provided by 28 U.S.C. §
1875(d)(1).

DISCUSSION

    "Under Federal Rule of Civil Procedure 8(a)(2), a pleading
must contain a 'short and plain statement of the claim showing

---

[6] The Beth Abraham defendants sought consolidation of Arnold II,
Arnold III, and Arnold IV.  The Union sought consolidation of
Arnold I, Arnold III, and Arnold IV.

that the pleader is entitled to relief.'"  Ashcroft v. Iqbal,

556 U.S. __, 129 S. Ct. 1937, 1949 (2009).  This rule "does not

require 'detailed factual allegations,'" id. (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555 (2007)), but "[a] pleading

that offers 'labels and conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do.'"  Id.

(quoting Twombly, 550 U.S. at 555); see also id. ("Threadbare

recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.").

        The defendants have moved to dismiss the complaint pursuant

to Federal Rule of Civil Procedure 12(b)(6).  A trial court

considering a Rule 12(b)(6) motion "accepts all well-pleaded

allegations in the complaint as true, drawing all reasonable

inferences in the plaintiff's favor."  Operating Local 649

Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86,

91 (2d Cir. 2010).  To survive dismissal, "a complaint must

allege a plausible set of facts sufficient 'to raise a right to

relief above the speculative level.'"  Id. (quoting Twombly, 550

U.S. at 555).  In other words, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at

1949 (quoting Twombly, 550 U.S. at 570).  Pleadings filed by pro

se plaintiffs are to be construed liberally.  See Erickson v.

Pardus, 551 U.S. 89, 94 (2007) (per curiam); Harris v. Mills,

572 F.3d 66, 72 (2d Cir. 2009).

The Jury Act mandates that "[n]o employer shall discharge . . . any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States."  28 U.S.C. § 1875(a).  The Jury Act provides that "[a]ny employer who violates the provisions of [§ 1875] shall be liable for damages for any loss of wages or other benefits suffered by an employee by reason of such violation."  Id. § 1875(b)(1). Injunctive relief and civil penalties are also available under the Jury Act.  Id. § 1875(b)(2) & (3).

## I.    The Union

The Union moves to dismiss the Complaint for Arnold's failure to allege any basis of liability against it.  While conceding that Arnold was represented by the Union while he was employed at Beth Abraham, the Union observes that the Jury Act only contemplates liability by an "employer" who wrongfully terminates a "permanent employee," and not for any other type of organization.  28 U.S.C. § 1875(a).

The Complaint does not state a claim against the Union.  To be sure, the Complaint does assert that the Union "is liable as plaintiff's 'employer'" within the meaning of the Jury Act, and in a February 4, 2010 letter submission to the Court, Arnold

9

makes clear that "he believes 1199SEIU also qualifies as his
employer."  Read in its entirety, however, the Complaint makes
plain that the only defendant for which Arnold worked in
exchange for compensation was Beth Abraham, while Arnold's
relationship to the Union was that of a member in a labor
organization that represented Beth Abraham employees.  Indeed,
the Complaint explicitly identifies Arnold as a "former employee
of Beth Abraham Health Services" and "member of the bargaining
unit represented by 1199 SEIU."

Although the Jury Act does not define the term "employer,"
the meaning of the term is not ambiguous under these
circumstances.  "When, as in this case, 'a word is not defined
by statute, [the court] normally construe[s] it in accord with
its ordinary or natural meaning.'"  City of N.Y. v. Beretta
U.S.A. Corp., 524 F.3d 384, 405 (2d Cir. 2008) (quoting Smith v.
United States, 508 U.S. 223, 228 (1993)).  "Where the statute's
language is plain, the sole function of the courts is to enforce
it according to its terms."  United States v. Hasan, 586 F.3d
161, 167 (2d Cir. 2009) (citation omitted).  As such, a litigant
may not "create ambiguity when none otherwise exists by defining
statutory terms contrary to their plain meaning."  Beretta, 524
F.3d at 405 (citation omitted).

It simply cannot be concluded that a labor organization is
an "employer" within the meaning of the Jury Act vis-à-vis an

organization member who does not work for the labor organization and is a member of the union only because he is directly employed by some other party.  Because Arnold's allegation that the Union was his employer is wholly conclusory and, indeed, contradicted by other allegations in the Complaint and in the plaintiff's previous filings in Arnold I, his claim against the Union must be dismissed.[7]

## II.  Beth Abraham Defendants

The Beth Abraham defendants move to dismiss the Complaint on the theory that the doctrine of res judicata bars plaintiff from litigating his Jury Act claim.  The Beth Abraham defendants assert that the Complaint is doubly barred: first, because Arnold litigated claims arising from the same set of facts in state court by appealing the Agency Determination, and second,

_____

[7] Arnold makes two other arguments why the Union should be held liable.  First, Arnold argues that the Union's failure to represent him fairly in his post-termination grievance proceedings should cause it to lose its non-profit status under § 501(c)(5) of the Internal Revenue Code.  Arnold does not explain, however, how the loss of non-profit status would have any bearing on the Union's liability to him as an "employer" under the Jury Act.  Second, Arnold asserts that the Union "knew or reasonably should have known" that Arnold was fired because of his federal jury service and that the Union did not investigate or challenge that basis for his termination during the grievance process.  The issue in this case, however, is not the fairness of the Union's representation of Arnold during the post-termination grievance proceedings, but whether the Union may be held liable for wrongful discharge as an "employer" under the Jury Act.  Arnold's fair-representation claim was already adjudicated in Arnold I, and Arnold is now barred from trying to relitigate that claim.

because the Beth Abraham defendants already obtained a final
judgment against Arnold concerning the merits of his employment
discrimination claims.  See Arnold II Opinion, 2009 WL 5171736.

     "Under both New York law and federal law, the doctrine of
res judicata, or claim preclusion, provides that a final
judgment on the merits of an action precludes the parties from
relitigating issues that were or could have been raised in that
action."  Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,
600 F.3d 190, 195 (2d Cir. 2010) (citation omitted).[8]  This
doctrine applies to "prevent[] litigation of a matter that could
have been raised and decided in a previous suit, whether or not
it was [actually] raised" in that suit.  Id. at 196 (citation
omitted); see also Giannone v. York Tape & Label, Inc., 548 F.3d
191, 194 (2d Cir. 2008) (per curiam).  "If a valid and final
judgment has been entered on the merits of a case, 'the claim
extinguished includes all rights of the plaintiff to remedies
against the defendant with respect to all or any part of the
transaction, or series of connected transactions, out of which
the action arose.'"  Duane Reade, 600 F.3d at 196 (quoting

---

[8] "[F]ederal law [applies] in determining the preclusive effect
of a federal judgment and New York law in determining the
preclusive effect of a New York State court judgment."  Indus.
Risk Insurers v. Port Auth. of N.Y. & N.J., 493 F.3d 283, 288
(2d Cir. 2007) (citation omitted).  New York law and federal law
on res judicata largely do not differ, however.  See Marvel
Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002)
("[T]here is no discernible difference between federal and New
York law concerning res judicata . . . .").

Restatement (Second) of Judgments § 24(1)).[9]  Res judicata may be invoked in support of a motion to dismiss under Rule 12(b)(6) when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."  Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000).

A.   Res Judicata Based on the Article 78 Review of the Agency Determination

The Beth Abraham defendants first assert that, because Arnold asserted claims of discriminatory discharge before the Agency and then sought review of the Agency Determination through an Article 78 proceeding in state court, Arnold is barred from bringing this lawsuit.  The Beth Abraham defendants rely, in part, on this Court's opinion in Arnold II, which

---

[9] In particular, under the law of the Second Circuit,

> [t]hree indicia determine whether the second suit involves the same claim or nucleus of operative fact as the first: (1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations.  The facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit.  It is instead enough that the facts essential to the second were already present in the first.

Channer v. Dep't of Homeland Sec., 527 F.3d 275, 280 (2d Cir. 2008) (citation omitted); accord, Restatement (Second) of Judgments § 24.

concluded that that case was barred by the res judicata effect
of the Article 78 Decision.[10]

The Article 78 Decision does not preclude Arnold from
bringing this lawsuit.  First, as Arnold correctly notes,
neither the Agency nor the Article 78 court had jurisdiction to
consider Arnold's Jury Act claim.  The Agency only possesses
jurisdiction to consider charges concerning "unlawful
discriminatory practice[s]" as that term is defined by the
NYSHRL.  See N.Y. Exec. L. §§ 292 & 296.  The Agency
Determination explicitly stated that its outcome rested, in
part, on the fact "that jury duty service is not one of the
practices protected under the New York State Human Rights Law."
The state Supreme Court, dismissing Arnold's Article 78
petition, concluded that because "the jury duty issue cannot be
litigated" before the Agency, "[Arnold] cannot appeal his

---

[10] The outcome in Arnold II depended, in part, on an application
of Kremer v. Chemical Construction Corp., 456 U.S. 461 (1982).
In that case, the Supreme Court held that the final judgment of
a New York state court upholding the Agency's determination that
a plaintiff had not stated a claim for employment discrimination
under the NYSHRL precluded a future Title VII suit filed in
federal district court concerning the same facts.  Kremer
depended, however, upon a finding that the prior state court
ruling would have been entitled to res judicata effect under New
York state law.  Because the Article 78 Decision would not be
entitled to res judicata effect in New York state court as to
Arnold's Jury Act claim, Kremer does not govern here.

dissatisfaction with the handling of that issue."[11]  The
Appellate Division further affirmed that conclusion.  <u>See</u>
Appellate Division Decision, 70 A.D.3d at 605, 894 N.Y.S.2d at
432 ("The alleged violation of an employee's right to be absent
from work for jury duty does not give rise to a private right of
action." (citation omitted)).  A plaintiff's second lawsuit is
not barred by res judicata where the second lawsuit asserts
claims that could not have been heard by the first court for
want of subject matter jurisdiction.  "Even where a second
action arises from some of the same factual circumstances . . .
<u>res judicata</u> is inapplicable if formal jurisdictional or
statutory barriers precluded the plaintiff from asserting its
claims in the first action."  <u>Computer Associates Int'l, Inc. v.
Altai, Inc.</u>, 126 F.3d 365, 370 (2d Cir. 1997); <u>see also</u> <u>St.
Pierre v. Dyer</u>, 208 F.3d 394, 400 (2d Cir. 2000).  As such, this
lawsuit is barred neither by the Agency Determination nor by the
proceedings in state court reviewing that Determination.

---

[11] To be sure, Arnold might have been able to bring his Jury Act
claim in state Supreme Court in the first instance.  Although
Congress has provided that federal district courts have
"original jurisdiction of any civil action brought for the
protection of jurors' employment under [§ 1875]," 28 U.S.C.
§ 1363, state courts are presumed to have concurrent
jurisdiction over federal claims in the absence of a contrary
congressional intention.  <u>See</u> <u>Haywood v. Drown</u>, 556 U.S. __, 129
S. Ct. 2108, 2114 (2009).  At least one state appeals court has
held that "state courts have concurrent jurisdiction with the
federal courts to adjudicate a suit brought under 28 U.S.C. §
1875."  <u>Aszkenas v. J.B. Robinson Jewelers, Inc.</u>, 560 So. 2d
1193, 1194 (Fla. App. 1990).

B.   Res Judicata Based on <u>Arnold II</u>

Second, the Beth Abraham defendants assert that this lawsuit is barred by the final judgment entered in <u>Arnold II</u>. While acknowledging that <u>Arnold II</u> and the instant case rely on different legal theories, the Beth Abraham defendants argue that Arnold's gender discrimination claim and his Jury Act claim arise from the "same nucleus of operative facts" and, therefore, must have been adjudicated in the same lawsuit.

The Beth Abraham defendants correctly state the general rule that a plaintiff may not pursue multiple lawsuits concerning the same transaction or occurrence.  "In civil suits a litigant must advance all available evidence and legal arguments relating to a claim or controversy in the context of a single proceeding."  <u>Johnson v. Ashcroft</u>, 378 F.3d 164, 172 n.10 (2d Cir. 2004).  In other words, "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."  <u>Curtis v. Citibank, N.A.</u>, 226 F.3d 133, 139 (2d Cir. 2000).  Res judicata is, thus, "a rule against the splitting of actions that could be brought and resolved together."  <u>Nestor v. Pratt & Whitney</u>, 466 F.3d 65, 70 (2d Cir. 2006); <u>see also</u> <u>Epperson v. Entm't Express, Inc.</u>, 242 F.3d 100, 109 (2d Cir. 2001); <u>Waldman v. Vill. of Kiryas Joel</u>, 207 F.3d 105, 110 (2d Cir. 2000); <u>accord</u>, Restatement (Second) of Judgments § 24.  For this reason, where

16

the plaintiff has failed to bring all of his legal bases for relief in the first action, "it is no answer to a claim of res judicata . . . that no decision was reached previously on the newly-asserted claims." Johnson, 378 F.3d at 172 n.10.

This lawsuit, however, falls within a narrow exception under Second Circuit law.  Prior to the Arnold II Opinion, both Arnold II and this lawsuit were pending simultaneously before this Court.  In Devlin v. Transportation Communications International Union, 175 F.3d 121 (2d Cir. 1999), the Court of Appeals held that res judicata does not bar a second lawsuit where both the first and second lawsuits were pending in the same court at the same time and where the court was aware that the cases were related.  Id. at 129-30.  The Court of Appeals concluded that the plaintiffs should not be "hoisted with their own procedural petard . . . . given the fortuitous circumstance that the same district judge had both Devlin I and Devlin II on his active docket at the same time."  Id.; see also Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc., 181 F.3d 174, 180 (1st Cir. 1999) ("Bay State") (relying upon Devlin for the principle that "a plaintiff with two closely related actions pending before the same district judge at the same time [should be] spared the potentially punitive res judicata effect of the entry of judgment in the first action").  In Devlin, the Court of Appeals observed that the procedural tool of consolidation, and

17

not the application of res judicata, is "[t]he proper solution
to the problems created by the existence of two or more cases
involving the same parties and issues, simultaneously pending in
the same court." Id. at 130 (citation omitted).

The final judgment in Arnold II also does not bar this
lawsuit for a second, albeit related, reason.  In December 2009,
while both Arnold II and Arnold IV were pending on this Court's
docket, the Beth Abraham defendants requested that the cases be
consolidated pursuant to Federal Rule of Civil Procedure 42(a).[12]
The result of the Beth Abraham defendants' request for
consolidation, had it been granted, would have been the
unification of all of Arnold's extant legal claims in a single
proceeding and, most likely, the filing of a consolidated
amended complaint.  Indeed, by seeking consolidation of Arnold
II, Arnold III, and Arnold IV, the Beth Abraham defendants
recognized Arnold's ability to assert his Jury Act claim.  The
fact that the Court found it unnecessary to consolidate the
actions in order to manage them effectively does not undermine

---

[12] Consolidation is proper "[i]f actions before the court involve
a common question of law or fact."  Fed. R. Civ. P. 42(a).
Consolidation may be granted, denied, or undertaken sua sponte
by the court as part of the "exercise of the district court's
discretion in the comprehensive management of litigation in its
court."  Curtis, 226 F.3d at 139; see also Devlin, 175 F.3d at
130.  "In assessing whether consolidation is appropriate in
given circumstances, a district court should consider both
equity and judicial economy."  Devlin, 175 F.3d at 130.

Arnold's right to pursue the Jury Act claim.[13]

Aside from their res judicata argument, the Beth Abraham defendants do not contend that Arnold's Complaint is deficient in any other respect.[14] Therefore, the Beth Abraham defendants' motion must be denied in its entirety.

## CONCLUSION

The Union's February 16, 2010 motion to dismiss is granted. The Beth Abraham defendants' February 18, 2010 motion to dismiss is denied. A scheduling Order accompanies this Opinion.

SO ORDERED:

Dated:    New York, New York
          May 27, 2010

                                    _____
                                    DENISE COTE
                                    United States District Judge

---

[13] The Beth Abraham defendants' application for consolidation was denied because, following the dismissal of Arnold I and Arnold II and the issuance of a show-cause dismissal order in Arnold III, no need for consolidation was apparent.  Moreover, throughout November and December 2009, the Court was managing the four Arnold lawsuits as a single unit, for instance, by staying the defendants' duty to answer or respond in Arnold III and Arnold IV until after the motions to dismiss had been decided in Arnold I and Arnold II.  Under such circumstances, where a court "adheres to the form of separate actions but recognizes close parallels that at least approach the effects of consolidation," the entry of judgment in the first lawsuit does not operate as a bar against the remaining lawsuits, except insofar as collateral estoppel might apply.  Wright, Miller & Cooper, Federal Practice and Procedure § 4404 (2d ed. 1994).

[14] Although the Jury Act contemplates liability only by an "employer," the Beth Abraham defendants have not sought to dismiss the claims against Kono, Connolly, or Frazier-White.

19